Filed 7/9/14  P. v. Echevarria CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F067604 |
| v. | (Super. Ct. No. 13CM8585) |
| JOSEPH LOUIS ECHEVARRIA, | **O P I N I O N** |
| Defendant and Appellant. | |

THE COURT\*

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Gomes, Acting P.J., Detjen, J., and Franson, J.

Defendant Joseph Echevarria was convicted by guilty plea of solicitation to commit murder (Pen. Code, § 653f, subd. (b)).[1] He admitted allegations that he had suffered a prior serious or violent felony conviction within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and had suffered a prior serious felony conviction (§ 667, subd. (a)(1)). The trial court sentenced him to a total of 23 years in prison: the upper term of nine years, doubled pursuant to section 667, subdivision (e), plus a consecutive five-year serious felony enhancement (§ 667, subd. (a)(1)). On appeal, defendant contends the trial court abused its discretion in imposing the upper term. We affirm.

## FACTS[2]

Defendant's girlfriend was having money troubles and thought she might be evicted from her apartment soon. She told Joel Wood that defendant would be calling him about a top secret matter. A few days later, defendant, who was incarcerated at Avenal State Prison, called Wood and asked if he would help him "take care of" the landlord. He also said "exterminate" or "eliminate." Wood made it clear to defendant he was not willing to help.

Wood then contacted the Federal Bureau of Investigation and agreed to assist in their investigation. Wood told defendant's girlfriend he would introduce them to a friend who would be willing to help. The friend was in fact an undercover agent. When defendant contacted the agent, he told him he wanted the landlord to "become a ghost" and "to disappear without a trace" for $400. Defendant provided the landlord's name, address, height, vehicle license plate number, and vehicle description.

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] The facts are taken from the probation officer's report.

2

In considering defendant's sentence, the trial court stated:

"In this case [defendant] solicited an individual to kill his girlfriend's landlord because she was delinquent on her rent and was being evicted. [¶] [Defendant] contacted an individual named Joel Wood and Mr. Wood declined the invitation to commit murder for hire. Mr. Wood then contacted the FBI who in turn was introduced to [defendant] and [defendant] … arranged with this FBI agent to kill the landlord for $400. [¶] … [¶]

"As far as the circumstances in aggravation, the Court does not consider the fact that [defendant] solicited another to commit murder as a circumstance in aggravation, and that is an element of the crime[;] the Court also does not consider the fact that [defendant] was … serving a prior term for murder in that he has already admitted to that and is suffering the consequences for that as well. [¶] However, the Court does consider a circumstance in aggravation that is a significant circumstance and that is [defendant] appears to be a very pleasant man, and yet this crime that he committed is such a—it's such a trivial matter and he took this to extreme measures, and that is his girlfriend was being evicted from her apartment and he felt that terminating the life of another individual was the appropriate response. The Court finds that this circumstance involves a high degree of viciousness and callousness, also the Court does find that it was a sophisticated crime in that he was able to do this while he was serving a life sentence for second degree murder. [¶] The sole circumstance in mitigation is his early plea. [Defendant] also does express remorse[,] claiming that he has found religion, and [defendant], I don't take that lightly, I think that … is a good thing for you. [¶] … [¶] The Court … does place great weight on the circumstance in aggravation in that this was again a very callous and vicious offense and the Court is going to impose … the aggravated term of nine years doubled by virtue of the admitted strike conviction."

## DISCUSSION

Defendant now claims that the trial court abused its discretion in imposing the nine-year upper term sentence. We note that defendant forfeited the error by not objecting at the sentencing hearing. (*People v. Scott* (1994) 9 Cal.4th 331, 353, 356; *People v. Brown* (2000) 83 Cal.App.4th 1037, 1041-1042.) But even on the merits,

3

defendant makes no showing that the sentence was arbitrary or capricious. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

Sentencing courts have wide discretion in weighing aggravating and mitigating factors and may balance them against each other in qualitative as well as quantitative terms. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) A trial court may base an upper term sentence upon any aggravating circumstance the court deems significant. (*People v. Sandoval, supra,* 41 Cal.4th at p. 848.) Absent a showing that the sentence is irrational or arbitrary, it is presumed that the trial court acted to achieve legitimate sentencing objectives. (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831-832.)

Aggravating factors are factors that make a crime "distinctively worse than the ordinary." (*People v. Moreno* (1982) 128 Cal.App.3d 103, 110.) Accordingly, facts that are more egregious than whatever is necessary to establish the offense may properly establish an aggravating factor or factors. (See *People v. Miranda* (1987) 196 Cal.App.3d 1000, 1003.) "Only a single aggravating factor is required to impose the upper term." (*People v. Osband* (1996) 13 Cal.4th 622, 728.)

Defendant "submits there was nothing particularly callous about what he did beyond the crime of solicitation of murder itself. By definition, the solicitation of another person's murder is a callous act. There is nothing about this offense that was vicious …." He "does not quarrel with the sentencing court's finding that this crime was committed for a trivial reason, but that alone cannot justify an upper term." Defendant's logic is unsupportable. If no circumstances could make the crime worse than the ordinary, because the crime is by definition already as bad as it can get, then no aggravating or mitigating circumstances would ever need to be considered. But that is obviously not the case. Soliciting murder to avoid paying rent and being evicted might be considered worse than, for example, soliciting murder to avenge a heinous crime. The use of murder

4

to solve a trivial matter, not even caused by the intended victim, is undeniably vicious and callous. Furthermore, as the trial court found, the crime was sophisticated in that defendant was able to arrange for the murder of a civilian, using contraband cell phones while in prison serving a murder sentence. These aggravating factors amply supported the trial court's imposition of the upper term. There was no abuse of discretion.

## DISPOSITION

The judgment is affirmed.